Catron, Ch. J.
As to the first point, can Campbell avail himself of the statute of limitations operating in his favor during the time the caveat suit was pending? I would content myself with the opinion of a majority of the court delivered at this term in the cause of Bugg vs. Norris, had not two of my brother judges delivered opinions in this cause contrary to that determination. I have in the recess of the court again looked into the doctrine, and think the opinion abundantly sustained on principle and authority.
In this cause, as in Bugg vs. Norris, it was adjudged, “that Ezekiel Norris hath the better right and title to the land in controversy, and that a grant issue to said Ezekiel Norris,” &c. This judgment was upon the direct and only issue between the parties, to wit, who hath the better right. It was pronounced by this court, and is in full *333 force, and was conclusive on Campbell and his tenants. Treveran vs. Lawrence, 1 Salk. 276: Outram vs. Morewood, 3 E. 351: Estill vs. Taul, 2 Yer. Rep. 407.
Had the judgment been in Campbell’s favor, ‘that his was the better right and title, ’ Norris would have been es-topped ever after from setting up his claim, because he would have been prohibited from obtaining a grant.
Estoppels are reciprocal, and bind both parties. 4 Com. D. Estoppel B. It follows-, if Norris’right would have been concluded, Campbell’s must be. He came into court to try titles with Norris, and must abide the consequences a decision in his favor would have imposed on Norris, notwithstanding the caveat was founded on a grant.
The decision also awarded to Norris the grant for the land, the main object and aim of the proceeding, in which both parties were actors, the defendant after he was brought into court, as well as the plaintiff. Norris, pursuant to the judgment, binding the surveyor, obtained his grant. He brought his ejectment. On the trial he read the grant, and proved the defendants in possession. They proved they had been in under Campbell’s title for more than seven years before the suit was brought, and relied upon their possession as a bar.
To do away the effect of this fact, Norris read the record in the caveat suit, commenced in 1816, and ended in 1827, and relied upon the judgment as part of his title, and as an estoppel to Campbell’s assumption that the better right was in him, in contradiction of the record. If Campbell was estopped by the judgment, it could well be given in evidence, and had the jury found contrary thereto, the verdict would have been set aside. 7 Bac. Ah. 40, Verdict U. Was Campbell estopped? In Treveran vs. Lawrence, (I Salk. 276, reported also in Modern and Ld. Raymond,) it was adjudged, “that where an estoppel works on the interest of the lands, it runs with the land into-whose hands soever the land comes, and an ejectment is *334 maintainable upon the mere estoppel. That not only the parties and all claiming under them, but the court and ju-xy are bound by this estoppel, and the jury cannot find against this estoppel: and the. court took this difference, that where the plaintiff’s title is by estoppel, and the defendant pleads the general issue, the jury are bound by the estoppel; for here is a title in the plaintiff, that is a good title in law,” &c. Tide also, Conn. R. 8: Swift’s Ev. 11, 12. It is objected the caveat did not go for the possession, although Norris to some extent was an actor in that suit: that the judgment only bound the title. This is true. But it adjudged the right in Norris at the time the caveat was filed, and also, “that he hath -the better right and title,” at the time of the judgment given. The possession held by Campbell during the litigation, was subordinate to it, as an incident of title, and drowned in the judgment. Behind it, Campbell is estopped to go.
The' esjoppel in the case in Salkield, was a judgment that “worked on the interest;” it determined the right. To enforce this right, an ejectment was afterwards prosecuted, grounded on the estoppel. So here.
Did the act of 1819 work so gross an injustice, as to bar the true owner, whilst he was kept in court by one having no title when he sued, there ought to he but one opinion in reference to it; it ought to he altered. And why? If Campbell can now successfully resist Norris’ title by force of the statute, there is no reason why he might not have taken advantage of his own wrong, and at the end of seven years after the act was passed, have filed another caveat on this newly acquired right, and resisted Norris’ claim as an actor in this form of action; which would have been a holding out, the same in effect, as the defence to the present ejectment. If it be true, that the possession is not an incident of the right, and not subordinate to a litigation directly involving it, and not bound by, and drowned in a judgment final and conclusive of the right, then I admit Campbell has the undoubted title in *335 fee by force of the act of limitations, and may well defend his title and possession against this suit. But that the possession cannot he separated from the title, and that it must stand or fall with it, seems to me a legal position well established. I therefore, on this point, concur with the circuit judge.
The second point in this cause, has from the nature of the proceeding on a caveat, also presented some difficulty. It is insisted, that in actions affecting the realty, one suit is not a bar to another for the same cause of action; and therefore, an ejectment may be brought to litigate the same matter decided in a suit by caveat, between the same parties.
Did the act of 1807, ch. 2, sec. 48-9, so intend? It provides, that if two claim the same land, and one gets a survey, the other may file a caveat, setting forth the nature of his title, and call on the adverse claimant to defend at the next succeeding court, which shall proceed to determine the right of the cause in a summary way, without pleadings in writing, by empannelling and swearing a jury for finding such facts as are material to the cause, and are not agreed upon by the parties; and shall thereupon give judgment. A copy of the judgment, if in favor of the defendant, on being delivered into the office of the surveyor, shall vacate the caveat; and if the judgment be in favor of the plaintiff, on delivering a eopy to the surveyor, the plaintiff shall be entitled to obtain a grant for the land mentioned and described in said caveat and judgment, in the same manner as if such person caveated, had never obtained a survey therefor.
It was the duty of the surveyor to survey the oldest entry first, (sec. 44,) and not to record two surveys for the same land. Of necessity, where the litigant parties both claim by virtue of conflicting entries, and the better right was adjudged to one in a suit by caveat, the right of the other was concluded.
*336 By construction a grantee has been let in to avail himself of the remedy by caveat. It is above shown that estoppels are reciprocal; the plaintiff having the power to conclude the defendant’s right if the judgment be in his power, is himself concluded if it be the other way.
That the same right in different suits, cannot be twice tried between the same parties, is a general rule, having no exception within my recollection in Tennessee, save in actions of ejectment; and even in these cases, the policy was so doubtful, that in 1801, ch. 1, sec. 60, the rule was repealed, but reinstated in 1805, ch. 24. And so substantially has at all times been the English law, notwithstanding the complaint of Lord Coke in the preface to his 8th report, 4‘that in real actions for freehold, often times there are divers verdicts on the one side, and divers on the other, and yet the plaintiff or defendant can come to no finite end, nor hold the possession in quiet, though it be often tried and adjudged for either party. Whereas, in personal actions, concerning debts, goods, and chattels, a recovery or bar in one action, is a bar in another, and there is an end of the controversy.” 3 Wil. 304: Swift’s Ev. 11. -That the complaint was not well founded, or that in times more modern, the evil complained of has been corrected by the courts, is most clearly shown by the court of King’s Bench, in Outram vs. Morewood and wife, (3 East, 351.) The court in this case declare what, therefore, Lord Coke says, ain personal actions concerning debts, goods and effects, (by way of distinction from other actions,) that a recovery in one action is a bar to another, is not true of personal actions alone, but is equally and universally true as to all actions whatsoever quoad their subject matters.
On this point I also concur with the circuit judge.
Third. It is insisted, that although Campbell may be barred by.the caveat as to such issues of fact as were found against him, and on which the cause was determined; yet as to facts not before the court in the caveat *337 suit, he is not precluded from relying on them in the . ’ P J ° ejectment.
It was attempted to be proved in this action, that Campbell had had seven years adverse possession after his grant issued in 1808, and before the caveat was filed in 1816. No evidence of such fact seems to have been adduced on the trial of the caveat.
On this point the circuit court charged the jury, “that the record of the judgment in the caveat cause, if for the same land, and between the same parties, and upon the same question of right, was conclusive evidence against the defendants in this cause, as to all right which Campbell had at the time of filing the caveat, whether Campbell then set up such possession or not; and that the statute of limitations could have been set up in the caveat suit.” To test the correctness of the charge, we must ascertain what the issue was between the parties; and we must first be careful not to be led away by a name. The facts found by juries in caveat causes, are so currently called issues, that courts are in danger of mistaking their nature. “The court shall proceed to determine the right of the cause, in a summary way, without pleadings in writing, by empannelling and summoning a jury for finding such facts as are material to the cause, and are not agreed upon by the parties; and shall thereupon give judgment.” The facts submitted to the jury, and such as the parties agreed upon, were mere evidence to the court on which to ground its judgment.
The mode of authentication is pointed out by the Legislature, differing from proceedings in chancery causes where the aid of a jury is not called in; but when the facts are found, the court determines the right of the cause. Plaintiff or defendant, may introduce more or less of evidence to sustain his claim; hut if he fail, he cannot he heard to say in a second suit, his principal evidence of title was not introduced in the first; and, therefore, he will try the same issue again on different evidence. On *338 such an assumption the same title might be the subject of manysuits. Swift’sEv. 11: 3East351. A caveator claims granted land with which after claims by virtue of many conflicting grants and conveyances interfere. In opposition to an old entry, he files his caveat, alleging lie has the better right by virtue of a certain claim, the nature of which he sets out. This is,tried and found against him, and the better right adjudged in. the defendant. The plaintiff then files his second" caveat, setting out another title to the land". This would result in endless litigation. The question of right presented by Campbell’s caveat, was, who had the better title to the land. It was determined Norris had. The judgment Is conclusive of the right, without reference to the evidence on which the adjudication was founded. Such is the rule in cases of trespass, where liberum tenementum is pleaded and tried, as also in all personal actions. Outram vs. Morewood, 3 East, 351.
On this point the circuit court instructed the jury correctly. Two of the judges of this court concurring with the circuit judge, on all the points controvered, the judgment of the court below must be affirmed.
Whyte, J.
The defence setup to the plaintiff’s recovery in this action of ejectment, is the statute of limitation of seven years, under the act of Assembly of 1819, ch. 28, sec. 1; which says, “when any person shall have had seven years possession of any lands, &c. and no claim by suit in law or equity, effectually prosecuted, shall have been set up or made to said land, within the time aforesaid, then the person so holding possession, shall be entitled to keep and hold in possession the land specified in his grant, &c. against all persons whatsoever.”
It is argued by the counsel for Campbell in this case, that the caveat that was brought respecting the same land between the same parties, and prosecuted to a final judgment rendered thereon, deciding the right between *339 them, is not according: to the words of the act, a suit in law J ° . . or equity effectually prosecuted against the person m possession, to wit, Campbell, and it is insisted by them, that Norris, to have avoided the bar of this statute, ought to have filed a bill in equity against Campbell, who was in possession, the decree upon which bill in his favor would have been a pursuance of the direction of the act, that is, a suit effectually prosecuted against the person in pos-sessesion, Campbell.
The validity of this argument of the counsel, will be examined. In 1S16, Norris having a survey in the surveyor’s office, upon an older special entry than that of Campbell, for the land in controversy, and progressing to perfect his legal title to the same by grant from the State of Tennessee, was obstructed in this proceeding by the latter, Campbell, who, on the thirtieth March, of the same year, filed his caveat against Norris, setting forth therein, that he, Campbell, had a better right and title to the land, or such part of it as was covered by his grant which he specifies, than Norris had, and therefore prays that no grant may issue to Norris, caveatee, on said survey, until the same can be heard and decided by the circuit court of Lincoln county; and further prays that a copy of this caveat may be filed with the clerk of said county, and that the same may be tried and determined according to law.
Is not this caveat a suit within the méaníng of the act of 1819, ch. 28, sec. 1? What is a suit? Lord Coke, (in 1 Institute, 225, a.) defines it to be actio aliud est., quam jus prosequendi in judicium quod sibi cebetur, and Blackstone.(3 Com. 116,) says, “suitor action is the legal demand of one’s right.” The act of 1807, ch. 1, sec. 47, 48, perfectly legalizes the caveat as a suit, and not simply as a suit, but as the proper suit adapted to. the- case, with the mode of proceeding therein by both the parties; the person who brings the suit, is styled the plaintiff, and the person against whom the suit is brought, is styled the *340 ^efen^ant5 the subject matter of which is the land. The act says, ££if any person has a survey, to which land any other person has a claim,” &c. directing all the steps to be taken particularly on both sides, &c. and if judgment be for the defendant, it shall vacate the caveat, if for the plaintiff, he shall be entitled to a grant for the land mentioned and described in said caveat and judgment, as if the person caveated, (the defendant,) had never obtained any survey therefor.
A suit by caveat then under this act of 1S07, ch. 47, 48, specially appropriated for the circumstances of the case, is adapted to meet a fair and full investigation of the rights and merits on both sides; the plaintiff or caveator, is by the act to state the nature of the right on which he claims the land, the quantity, and part of the survey claimed; and the defendant is to be summoned, which summons shall recite the cause for which the caveat is entered; and the court shall proceed to determine the right of the cause in a summary way, without pleadings in writing, by empanneling and swearing a jury for finding such facts as are material to the cause, and are not agreed on by the parties, and shall thereupon give judgment.
But, notwithstanding this suit by caveat, prescribed by the Legislature expressly for the case, so well adapted to all its circumstances, giving due notice, permitting every allegation by the parties in support of their rights respectively, by parol, without being entangled in the net of form, by pleading, and when facts are controverted between the parties, a jury upon oath is provided to ascertain and settle them; yet it is still contended, that this suit by caveat between the parties, is not conclusive evidence of the right to the land in controversy by it; because it does not appear by the record of that caveat expressly in so many words, that the fact of the length of the possession of plaintiff, Campbell, the caveator, came in question upon the trial, or that it (such fact) would properly come in question, *341 and therefore, upon the trial in the ejectment the charge of the circuit court upon this point was erroneous, which says, 4‘that if Campbell had at the time of his filing his caveat been seven years in possession of the land in dispute, he might have set up that possession against Norris’ claim, and if he did not set up that possession, it is a circumstance for the consideration of the jury, that he, Campbell, had not that possession.”
This last objection presents, the question, whether a seven years possession of the land is a relevant fact, to he given in evidence upon a caveat, by him who has such possession? Most certainly it is not only a relevant, hut a most important fact, as it gives by this act of 1819, an indefeasible title and an estate in fee simple to the land. Then why did not Campbell, on his part, advance and set forth this fact of a seven years possession, to show that the indefeasible right to the land was vested in him;' how is his silence as to this most important fact, to be accounted for? Every man of common understanding must say, that it can only be accounted for on the single ground that such fact had no existence, or it would have held a prominent station amongst the other facts advanced on his side of the controversy.
But, whether the fact of a seven years possession of the land in dispute, at the time the caveat suit was commenced, had existence or not, is not material now on this action of ejectment to be ascertained, for take it either way, the consequence is the same: it was a fact that most properly came in question, and could have been advanced and used; if it was not used, it was the party’s own fault to keep it back, and cannot now be called up and insisted on. This principle governed the case of Smith vs. Johnson, (15 East, 213,) where Lord Ellenborough says, “here is aref-erence of all matters in difference, and it appears tliat the subject in respect of which the deduction is now claimed, was a matter in difference at the time, and within the scope of the reference; notwithstanding which, the de- *342 ^enc^ant contends, that he was not obliged to bring forward the whole of his case before the arbitrators, but might keep back a part of it, in order afterwards to use it as a set off. But it was competent to him to have brought the whole under the consideration of the arbitrators; and therefore, I think that when all matters in difference are referred, the party, as to every matter included within the subject of the reference, ought to come forward with the whole of his case.” Gross, J. and Bayley concurring. In Peak’s Evidence, 33, 41, it is laid down, that “It is a general rule, that the merits of one action shall not be investigated in a second suit, brought for the same cause of action.” And in Outram vs. Morewood, Lord Ellenborough, who delivered the judgment of the court, says, what therefore, Lord Coke says, that in personal actions concerning debts, goods and effects, by way of distinction from other actions, a recovery in one action is a bar to another, is not true as to personal actions alone, but is equally and universally true as to all actions whatsoever, quoad, their subject matters. 3 East, 357,358. Same doctrine, Hale’s Com. Law, 33, (notes,) 'Duchess of Kingston’s case: Starkie’s Evidence, part 2, page 200, and cases there cited. Now does not the above rule forcibly apply to the present case? What was the cause of action in the caveat suit between these parties? land. What was the very subject matter of litigation, and no other? a certain portion of land, specificated in quantity and in locatio'n, by the most distinguishing particularity. And is not the very same cause of action, the very same subject matter of litigation, now a second time controverted between these parties in this ejectment? The true answer, and that which commands the assent of every mind acquainted with the allegata and probata in both suits, is, and must be, that it is the very same.- But the counsel for Campbell say, there is a distinction, that the caveat suit regarded the right to have a grant for the land in dispute; this *343 ejectment regards not only the right to the land, but .the possession also; that therefore, the judgment for the issu-anee of a grant from the State in favor of Norris on the caveat suit, being more circumscribed in its action, and more limited in its effect,,than a judgment in ejectment, the former, that is, the judgment on the caveat, was not, and ought not to have been charged by the circuit court as conclusive evidence upon the trial in this ejectment, of Norris’ superior right and title to the land in dispute,- and also to the possession; that there is a difference in the effect authorized and produced by the issuance of a grant from the state for a piece of land, and in the effect authorized and produced by a recovery in ejectment for the same specific piece of land, between the parties litigant, a's to operating on the possession. This presents a distinction, to use an expression in Starkie’s Ev. (part 2, page200,) “somewhat shadowy,” even if there was any ground for it: but it is believed to be a proposition that cannot be doubted, that the issuance of a grant from the State, regards the possession of the specific land in the grant, and actually transfers that possession, as well as the right and title to the grantee, as effectually, and as completely to all intents and purposes as if livery of sei-zin had been made. The form of our state grants; the acts of assembly authorizing the issuing of them for the-public lands, of which there are a great number; all of them contemplate, that an absolute estate in fee simple upon their issuance, passes to the grantee, giving him a perfect right and possession, without actual entry, to as full an extent, and in as beneficial a manner as the state itself held them: thereby attaching to the grantee all the legal remedies incident to such estate. It is not to be doubted, but that the Legislature had the power to give this perfect title and possession by the grant without an actual entry, and it is as little to be doubted, but that they so intended, and have so done. See the acts of 1715, ch. 29, sec. 1, ch. 38, sec. 5, ch. 33, sec. 6: 1777, ch. *344 1, sec. 1, 2, 3,4, 5, 6, &c: 1783, ch. 12, sec. 1, 2, 3, &c. &c. See the case of Greén vs. Liter and others, (8 Cranch, 229,) where all the above principles as appertaining to a state grant of land, are laid down. In page 247 of the report, it is laid down, “No livery of seizin is necessary to perfect a title by letters patent. The grantee in such case takes by matter of record, and the law deems a grant of record, of equal notoriety with an actual tradition of the land in the view of the vicinage. It is the union of a right and seizin that constitutes a perfect title. ” In page 248, of the same case, it says, “we think a patent under the land law of Virginia must be considered as a statute grant, which is to have all the legal effect attached to it which the Legislature intended. It cannot be doubted, that the Legislature were competent to give their patentees a perfect title and possession without actual entry. Have they done so? We think that it is impossible, looking to the language of their acts, or the state of the country, to doubt that the whole legal estate and sei-zin of the commonwealth in the lands, passed to the pat-entee upon the issuing of his patent, in as full an extent, and beneficial a manner, subject only to the rights of the commonwealth, as the commonwealth itself held them.” Seenlso the case of Barr vs. Gratz, 4 Wheaton. It may he proper here to remark, that on looking into the land law of Virginia, it will be found, that the same principles governed that state in parcelling out her vacant lands, as did the States of North Carolina and this State, and in many parts, even of-the minulia of proceeding, a considerable resemblance exists. The mode of trying disputed claims by caveat upon the appropriation of public lands, and the proceedings thereon, are nearly the same; therefore, adjudication upon her land laws, may often have a very proper application here.
The above authorities prove that the possession of the land, and the question concerning it, accompanied, pari passu, the right and title to the land on the caveat suit; *345 and indeed upon the plaintiff Campbell’s claim in fee under his grant for one thousand acres, would not be separated from it. Every matter, therefore, respecting the possession, as an adverse possession, a sole possession, a rightful possession with length of continuance, were facts and circumstances, each of which was competent to be used, and rendered available to him quantum potest, if deemed proper. And if his possession had reached to seven years at the bringing the caveat, an indefeasible estate in fee simple was vested in him under the statute, which would not only have prevented the issuing of a grant to Norris, but have authorized a grant to have issued to himself, Campbell, for the land described in the caveat and judgment, in the same manner as if the cave-atee, Norris, had never obtained any survey therefor.
But it is argued by the counsel for Campbell, that upon the filing of the caveat, Norris ought to have filed his bill inequity against Campbell, to comply with the requisition of the act of 1819, which requires a suit effectually prosecuted against the person holding the possession, by him who may have a legal or equitable title to the same lands, to avoid the bar of seven years possession given by the act in favor of the possession.
My opinion is, the bill in equity proposed in this argument, could not be supported by Norris; but before I proceed to show the objections preventing the filing and maintaining such a bill, in the present case, for the purpose of bringing into question the possession, and the defence accruing upon a seven years’ continuance of that possession, I will first briefly notice two grounds assigned, and urged upon the argument by the counsel, why this bill should be brought by Norris.
1. That a bill is necessary to be brought for the purpose of examining properly the question of possession, which it is alleged the caveat suit in its nature was incapable of, as the only question arising on the caveat, being a question of who had a right to a grant, or who had the right to *346 ^ave l^e Srant issued to him, the question of possession not properly coming within the limits of that proceeding; and
2. That the suit upon which the question of possession is to be examined, must be brought by a person as plaintiff in the suit, claiming against the person in possession as defendant, upon which he can set up the bar of seven years, under the act of 1819, cli. 28, sec. 1.
As to the first ground, I have already shown that the question of possession could properly be made in the caveat suit, and will now only observe'that its examination upon that proceeding, could be more fully gone into than upon the. bill proposed; as on the former, (the caveat,) a greater latitude is allowed to both parties than could be permitted in a bill in equity. On the former, all kinds of questions material to the cause, may be brought into-view, and examined, and discussed, to arrive at a right determination, which could not be permitted by a forum that is either properly legal, or properly equitable; this has been held by this, supreme court in the case of Peck vs. Eddington, (see Peck’s Rep. 332,) where if is laid down ,that “ona caveat, equitable as well as legal questions come into view.” As-to the second ground, that to prevent the bar of 1819, the suit must have been brought by a plaintiff claiming against the holder of the possession. This deduction is professedly drawn from the first section of the act, which says, “ that in all cases where any person or persons, &c. shall have had seven years’possession of any lands, &c. granted by this State, &c. holding by virtue of a deed purporting to convey an estate in fee simple, and no claim by suit in law or equity, effectually prosecuted, shall have been set up, or made within the time aforesaid; then the person so holding possession, shall keep and hold possession, &c. against all persons whatsoever, &c. and any .person who shall neglect to avail himself of his title, legal or equitable, for seven years, by suit in law effectually prosecuted against *347 the person so holding as aforesaid in possession, shall'be forever barred. ” Now what is the substance of the above section? Is it not simply this, that a seven years’ possession without suit effectually prosecuted, shall bar the claim set up or made against that possession? It certainly was a stipulation never contemplated by the act, that to constitute a suit effectually prosecuted, the person claiming against the possession should, as is argued, sustain the character of plaintiff in the form of that suit on the record, and the holder of the possession the character of defendant therein. A full and fair trial of the matter in dispute, according to the directions of the law, and final judgment rendered therein, is what the act required, without noticing any arrangement as to the places the parties thereto should respectively occupy in its form. This construction of the act is substantiated by the present caveat suit between these parties, view it as you will. Campbell’s view of it, as taken by his counsel in their argument, is this: that the petition (or demand) of the caveat suit is merely for the grant, and the determination or judgment of who has the best right to have it from the State, and that Campbell is in possession of the land. Now what is the fact? At the time of filing this caveat suit, Norris is in full pursuit of the'grant, and in this view plaintiff; he has progressed to a survey, and has it filed in the office, ready for a grant to issue thereon', and claiming that he is entitled to have it by virtue of his oldest special entry; he therefore claims against Campbell holding in possession; this makes a case producing an opportunity for the application of the statute of 1819; and if Campbell had this possession for the space of seven years, this action gives him an indefeasible estate in fee simple. But view the matter correctly, that the grant issuing from the State, gives not only the wax and parchment, or paper, but at the same time gives the land and the possession .of the land, which most assuredly is its province; then here is a suit for a complete claim, and judgment having been in *348 favor of Noms, that a grant issue to him; it is a suit ef~ iectually prosecuted by Norris, as the plaintiff, against Campbell, the holder in possession.
But take the other formal view of the caveat, as it is presented in the record, under the act of 1807; Campbell is the plaintiff, and Norris is the defendant, the matter is litigated between them, pursuant to the course prescribed by law, to wit, the 47th and 48th sections of the said act, to a judgment, and that rendered in favor of Norris, the defendant, on the record; is not the claim as effectually prosecuted in this view when Norris is defendant on the record, as in the other when he was considered plaintiff? It must be so, because for the same claim, consisting of the same subject matter, the same rights and title, the same possession, and the judgment in favor of the. same-person.
This proves that in a caveat suit, there is nothing in the assumed position, that the person prosecuting his suit effectually, must be the plaintiff in form, on the record in that suit. The true state of the case in caveat suits under the act, is, that both parties are actors, or plaintiffs; and both are also defendants; both bringing forward their respective claims, setting, them up and making them to the same land: and when a judgment is rendered according to the act, be it for the plaintiff on the record, or be it for the defendant on the record, when regularly prosecuted to a judgment rendered, it is a suit effectually prosecuted by a person claiming the possession.
I now proceed to state the objections to the bringing and maintaining a bill in equity by Norris, for the purpose of litigating the question of Campbell’s possession, and his defence of the statute of limitations under the act of 1819, so strenuously insisted on by his counsel; as the most proper step to be taken by Norris, when obstructed in the pursuit of his grant, by Campbell’s caveat, he, Norris, having then only an equity.
The first objection to the bringing a bill is, that there *349 is an express grant of the jurisdiction in controversies of this kind, to another court, which is a court of law; by the act of 1S07, ch. 2, sec. 47, 48, this is the court of the county in which the land or any part of it lies, with the privilege of appeal by the party dissatisfied, to the superior court of the district in which the court may be. Upon the statements of the facts, therefore, in the caveat suit in Norris’ bill, it would have been cut down upon demurrer. See Cooper’s Equity Pleadings, 124, which says, “if a plaintiff can have as effectual and complete a remedy in a court of law, as in a court of equity, and that remedy is clear and certain, a demurrer, which is in truth a demurrer to the jurisdiction, will hold.” I have before shown, that the remedy upon caveat under the act, is more ample than in a forum either properly legal, or properly equitable, being admissible of a greater latitude of examination and discussion.
2. Another objection to the sustaining a bill in equity is, this act of 1807, has directed this particular species of dispute, to be tried in a summary way, without pleadings in writing. The supporting a bill in equity would act in contravention of this salutary provision, not only by causing delay, but exposing the parties to additional trouble, and accumulated expense, evils which the land law of this State expressly intended to anticipate and prevent. A demurrer to the proposed bill, would therefore hold, founded upon this objection. The case of Parry vs. Craven, (3 Atkyns, 740,) is an authority directly in point. As the case is short, I will transcribe it. “A bill brought by the executrix of an attorney for money due from the defendant, for business done by her husband as his attorney, and to be paid what shall be found due on an account, and states the delivery of a bill by the plaintiff. The defendant demurred to the relief, and for cause of demurrer showed, the remedy was at law, and that an act of parliament has pointed out a summary way, the statute of 2 Geo. II, ch. 23, sec. 22. Lord Chan *350 cellor allowed the demurrer.” Same case in Ambler’s Rep. 109.
3. It is argued by the counsel, if Norris had filed his bill, the right and title to' the land, the possesion of the land, and the application of the statute of limitations to that possession, would have all come in question, and been acted upon by the decree directly or conseqentially. The proceeding in equity according to its principles and practice, is directly the reverse, and repugnant to such relief; for when the object of a bill is the possession, or in part the possession of land, equity will dismiss the bill upon demurrer. Cooper’s Eq. Plead, 125. So in 3 Ves. 4, it hath been ruled, even though the bill charged that the defendants had got the title deeds, and mixed the boundaries, praying a discovery, possession and account; for though the plaintiff was entitled to a discovery, yet by praying such relief he rendered his whole bill demurrable. Same-point held in 3 Ves. 343.
Lastly, the operating principle, cause and use of this peculiar proceeding by caveat, being prescribed by, and so particularly directed by the different acts of Assembly from the year 1777, to the year 1807, the space of thirty years, must not be overlooked; they will casta light upon it that will show that no other suit could be contemplated by the Legislature upon its subject matter, but this one singly, in the execution of the act.
The political change effected in 1776, by the revolution, having vested all the vacant public lands of the territory of North Carolina, in the new government, it became in the then existing situation of the country, a desideratum of the first magnitude, to have these lands as soon as possible settled by a population having an immediate interest in the soil; the government attaching all its energies to the preservation of its lately acquired liberties and rights, which were assailed by one of_ the most formidable powers then existent. To accomplish this purpose, and make a distribution of these *351 vacant lands, that would promptly give to individuals, not a temporary and'precarious residence, subject to iuture disputation, but a lasting and permanent settlement, free, and discharged from all prior pretences, were the causes and reasons of the Legislative provisions of the act of 1777, ch. 1 sec. 1, 2, 3, 4, 5, 6, &c. in which they publicly declare, “that it is expedient that the lands within this State should be parcelled out to industrious people, for the settlement thereof, and increasing the strength and number of the people of the country, by affording an easy and comfortable subsistence for their families;” and they go on in directing the manner of parcelling out by entry, &c, and if opposite claim be made, the same shall be transmitted to the county court; and they say, “it is expedient that all such disputes be terminated with as little delay and expense as possible, consistent with justice and the constitution of the State, and direct the manner of trial which is by jury sworn, and the witnesses on both sides,are to be examined, and the allegations of the parties made before the jury, who are to render a verdict; if general for either of the parties, a certificate is to be given, on which to proceed to survey and grant; if a special verdict, the court is to decide according to the right of the case, and the determination to be delivered to the party, who may proceed thereon,, as on a general verdict.
The legislature in these sections having expressed their will that the parcelling out these lands, and the obtaining titles to them, should be done as expeditiously as possible, and the disputes arising thereon be terminated with as little delay and expense as possible, again enforce this policy, by .imposing on the second claimant the giving bond with sufficient security, to pay all costs and damages in case of failure, to him whose prior claim has been duly entered, and this is to be done before such claim is to be received for litigation; and furthermore,-the principle of priority is so much respected by the policy of these *352 acts that a proviso is introduced declaring that nothing in the act shall extend to affect any right, title or interest heretofore obtained by patent from the crown of Great Britain, or to bar any such right, title, interest and possession. These legislative declarations and provisions show that patents or grants of land, as well under the colonial government as under the state government, always considered the possession of the land to be included in the grant, as well as the right and title, giving an indefeasible interest or perfect title, with all its incidents.— All objections, claims and obstructions, are thus answered, disposed of and removed, upon the statutable proceeding by caveat prescribed for that purpose, which negatives any subsequent suit or proceeding calling the grant in its most enlarged sense in question, upon any ground originating before its issuance, if free from fraud and co-vin.
In the present case, therefore, the determination upon the caveat between these, parties, and given in evidence on the trial in ejectment, was in law a final adjustment of, and determination of the matter in dispute, composed of the possession, as well as the right and title, and that this determination on the caveat was conclusive as evidence on the trial in ejectment, between the parties thereto, they being the same as in the caveat. Therefore, there is no error in the judgment of the circuit court, which this court now affirms.
Peck, J.
Campbell brought his caveat against Norris, setting up an entry for the land surveyed by Norris. Trial was had, and upon the finding of facts, Norris had judgment that his was the better right and title to the land in controversy, and that he have his grant. The question of possession was not submitted or found upon trial of the issues.
This action of ejectment was brought. Campbell, the plaintiff in the caveat, now defendant, insists that his ti- *353 tie, though found by the caveat inferior, has become the " § better one by limitation; that he had possession commencing before the caveat, and kept it since, more than seven years; which in this action gives him the better title.
The court charged, in substance, that if Campbell in the caveat, intended to set up his possession of seven years, if it existed, he should have done it m the caveat suit; and having waived it then, it is a circumstance for the consideration of the jury against his having had such possession before filing the caveat: That the caveat filed by Campbell, 30th March, 1816, against Norris, if it was for the same land, was such a suit as during its pendency would prevent the running of the statute of limitations, though the running had already commenced: that the suit by caveat, if for the same land, and between the same parties, and upon the same question of right, was conclusive evidence in this cause as to all right which Campbell had at the time of filing the caveat, whether Campbell had set up his possession or not, and lhat it could have been set up in that case. Upon this charge Norris prevailed; and from the judgment Campbell brings this writ of error.
The main question is, whether Campbell can interpose’ his possession under the circumstances, so as to prevail against the title declared to be the better one in the caveat. For Campbell to try an experiment upon the caveat brought by him, not in the meanwhile interposing the influence of possession, or relying upon it in that investigation, and afterwards to set it up when assailed by the title which had grown out of his own case,, would be, it is said, to permit him to hold off his adversary under mere pretences, until time had done for him what -the courts in his own suit had refused to do.
But the pendency of the caveat is no obstacle to the running of the statute: it was not, in the language of our act of assembly, “a suit prosecuted for the land” by Nor- *354 ns. The proceeding did not involve the possession so x T r °. . , r- i as to work an estoppel, when m another iorm the jfuestion of title should be presented. The record of the ea-veat when introduced, is no evidence to this point, because the possession was not involved, and could not be affected by any of the issues submitted. It could not stay the computation of time during the litigation, so as to form a bar in this suit, because it did not result in an inquiry as to that matter. Take the caveat even in its form; suppose it be the commencement of either a legal or equitable proceeding, it does not ask a surrender of possession. Supposing that the technicalities in the form will not be looked to, as the proceedings are summary, yet, in the farther progress of the suit, nothing is said or done upon the question of possession. As therefore this case, brought by Campbell to prevent the issuance of a grant to Norris, cannot on principle operate further than upon the matters adjudicated, it is going too far to permit the proceeding touching one thing to become effectual as to another, dissimilar in character. The litigation, such as it was, was rather calculated to put Norris upon vigilant enquiry as to the possession, than to lull him into repose upon that point; for the act of assembly of 1819, was all the time admonishing him, that unless he set up his claim, be it equitable or legal, the seven years would become an effectual bar; and if doubts before existed as to the right to go into equity upon the entry only, and thereby stay the running of the statute, the act of 1819 dispels the doubt; it recognizes such a suit; and the act of 1801, authorizing a decree of the title of the land, it follows as a consequence, that if the title could be decreed, the possession, which ought to follow as a consequence, could be decreed also. For if the court could take jurisdiction as to the principal, it would have it as to the incident.
I was reluctant in admitting the doctrine, that before the act of 1S19 equities could be barred under the previous statutes. This reluctance arose from the entire ab *355 sence of any adjudged case that way, and from the fixed conviction of eminent jurists that the doctrine could not be tolerated, not being covered by the language of the acts. But under the subsequent act of IS19, all doubt is removed; so that the construction of the first acts being forced upon me, and the letter of the last needing no construction, I am doubly fortified in this opinion. As to the point of evidence, it is equally clear upon our own decision, that to work an estoppel in a subsequent suit, the very point and matter litigated in the last suit must appear to have been in issue in the first. Taul vs. Estill, 2 Yer. R. 467. I am for reversing the judgment.
Green, J.
Campbell, under whom the plaintiff in error claims title, took possession under a grant to himself of the land in controversy in 1S08, or 1809, and by himself or his tenants, has continued in the uninterrupted possession thereof, up to the year 1827, when this suit was brought. Norris has the oldest special entry. In 1816, Campbell filed a caveat to prevent Norris from obtaining a grant, which suit in 1827, was decided in favor of Norris, the court deciding that he had the better right, and that a grant should issue to him. Soon after the determination of the caveat suit, Norris brought this action of ejectment, and the question now is, whether he is barred by the statute of limitations.
By the act of 1819, eh. 28, sec. 1, “in all cases where any person shall have had seven years possession of any lands, tenements or hereditaments, which shall have been granted by this State, or the State of North Carolina, holding or claiming the same by virtue of a deed or deeds of conveyance, devise, grant or other assurance purporting to convey an estate in fee simple, and no claim by suit in law or equity, effectually prosecuted, shall have been setup or made to said lands, tenements or heredita-ments within the aforesaid time, then and in that case the person or persons, their heirs or assigns, so holding *356 possession, shall be entitled to keep and hold in possession such quantity of-land as shall be specified and dis-cribed in his, her or their deed of conveyance, devise, grant or other assurance as aforesaid, in preference to, and against all, and all manner of person or persons whatsoever; and any person or persons and their heirs, who shall neglect,. or who shall have neglected for the said term of seven years, to avail themselves of the benefit of any title, legal or equitable, which he, she or they may have to any lands, tenements or hereditaments, within this State, by suit in law or equity, effectually prosecuted against the person or persons so as aforesaid in possession, shall be forever barred; and the person or persons, their heirs or assigns, so holding or keeping possession as aforesaid, shall have a good and indefeasible title in fee simple, to such lands, tenements or heredita-ments.” This act provides expressly, what the courts had said was intended by the act of 1797, ch. 43. Eight years had .elapsed from the passage of the act of 1819, before the commencement of this suit. The only matter for the court to determine is, whether Campbell was in adverse possession of the land in controversy for more than seven years before the suit was brought; and whether Norris was under any disability to sue. The Legislature has cut off all other enquiry, and has declared ¡that if such possession has existed, and none of the disabilities they have enumerated as exceptions have prevented a suit in law or equity, the claimant shall be barred. This bar is interposed as inflexibly to an equitable as to a legal claim; and the necessity of bringing a suit in equity, when there is no legal tide, is as imperious in order to prevent the bar, as is the prosecuting a suit at law, when one may be brought. In this case, Norris had only an equitable title; but he might have set up that title by a suit in equity, which could hfive been prosecuted effectually for the recovery of the land. The statute expressly required him to do so, but he has ‘‘neglected” *357 to do it. But it is said he defended a caveat suit, , , . , . . . . and that is equivalent to tbe prosecution oí a suit m “equity.” In the first place, it may be replied, the act does not say or mean, that if a party successfully defends a suit, that shall save the bar; and if we, by construction, shall say, that the defence of a suit is equivalent to the prosecution of one, and therefore within the meaning of the act, may we not relax the rigor of its prosvisons still farther, and .with equal propriety say, that the setting up a claim by other means, than either the prosecution, or defence of a suit, is also equivalent, and thus introduce a multitude of exceptions, destroying all the certainty and security to the possessor of the soil, which the act was intended to provide? The act does not mean that any thing shall be taken as equivalent to the prosecution of a suit; and the adoption of such a principle as Jeducible by construction from the act, would be most mischievous in its consequences. But in point of fact, the defence of this caveat was not equivalent to, nor did it result in the consequences which would have followed a suit in equity prosecuted by Norris. If Norris had filed a bill in equity, not only the title, but the possession would have been involved in the suit; and upon a decision in his favor, the legal title would have been vested in him, and the possession, as a consequence, would have been transferred to him in execution of the decree. No such question is involved in the caveat, and no such consequence could result from its determination. By the act of 1807, ch. 2, sec. 48, the filing a caveat merely prevents the caveatee from getting a gMnt until it shall be determined. If upon the trial it shall be found that the caveatee is entitled to a grant, the court so determine, and such judgment being filed in the surveyor’s office, vacates the caveat. The only matter then in litigation is, whether the caveatee shall have a grant, and the judgment of the court cannot go farther than to determine that question in his favor. The litigation is *358 collateral to and not at all involving the question, of possession. Another suit, as this action proves, is necessary, in order to enable him to obtain it. The judgment in the caveat suit is conclusive, only, as to the'questions directly in issue. 1 Starkie, 202: Estill vs. Taul, 2 Yer. Rep. 467.
The question of possession not being involved in the suit, nor in any wise a consequence of it, is not affected by the decision. It was not in subordination to the determination, and therefore was held adversely during the whole time of the pendency of the caveat; and having been so held adversely during the whole time of the pen-dency of the caveat, and having been so held more than seven years, without suit either in law or equity effectually prosecuted, the title is vested in the plaintiff in error, and the defendant in error is forever barred. See Hickman’s lessee vs. Gaither and Frost, 2 Yer. Rep. 200: Porter’s lessee vs. Cocke, Peck’s Rep. 30, 45.
Judgment affirmed.